UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RUSSELL LAWRENCE FORD, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:09-cv-02618-RBP-HGD |
| WILLIE THOMAS, WARDEN, ) | |
| and THE ATTORNEY GENERAL ) | |
| OF THE STATE OF ALABAMA, ) | |
| ) | |
| Respondents ) | |

## REPORT AND RECOMMENDATION

Petitioner, Russell Lawrence Ford, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the validity of his 1987 conviction in the Circuit Court of Calhoun County after a "best-interest" plea of guilty to a charge of first degree rape.

According to the habeas corpus petition, petitioner entered an *Alford*[1] plea of guilty to one count of first degree rape on November 9, 1987. In return, the State dismissed charges of sodomy and kidnaping, but requested a sentence of life

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)

imprisonment. On November 30, 1987, petitioner was sentenced to a term of 25 years of imprisonment. He did not file a direct appeal.

On December 6, 2006, petitioner filed a post-conviction petition for relief pursuant to Rule 32, Ala.R.Crim.P. As grounds, he asserted he had newly discovered evidence, in the form of a witness who said the assailant had tattoos; whereas, petitioner had no tattoos. Petitioner contended he was entitled to discovery to establish actual innocence. However, the State responded that it had destroyed all evidence in petitioner's case except for the police report, approximately a year after petitioner's conviction. Petitioner argued that the State acted in bad faith in prematurely destroying the evidence. On January 5, 2009, the trial court denied the Rule 32 petition, without specifically ruling on petitioner's right to post-conviction discovery or the claim of bad faith destruction of evidence.

Petitioner appealed the denial of relief to the Alabama Court of Criminal Appeals. He contended that the State violated *Ala. Code* § 36-18-2, which he characterizes as providing for permanent preservation of evidence in cases where guilt is not conclusive. Petitioner asserted that because he entered an *Alford* plea, his guilt was not conclusive. He also asserted that the destruction of evidence upon expiration of time to file a direct appeal, instead of at least waiting until the limitation period for a collateral challenge, demonstrated bad faith, was done in violation of

Alabama law, and was done pursuant to a routine policy that is in derogation of statutory requirements. The appeal was denied on June 12, 2009. The Alabama Supreme Court subsequently denied a petition for writ of certiorari.

## DISCUSSION

Rule 4 of the *Rules Governing § 2254 Cases* allows a habeas corpus petition to be dismissed summarily by a district court if it plainly appears from the face of the petition that the petitioner is not entitled to any relief. The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The effective date of the AEDPA and, thus, the statute of limitations contained therein, was April 24, 1996. *See Hunter v. United States*, 101 F.3d, 1565, 1568 (11th Cir. 1996). There is a one-year "grace period" for filing a post-AEDPA habeas petition by petitioners with pre-AEDPA convictions, such as Ford. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1211 (11th Cir. 1998), citing *Goodman v. United States*, 151 F.3d 1335 (11th Cir. 1998). Thus, petitioner had until April 24, 1997, to file his AEDPA habeas petition, unless this time period was tolled by a properly filed application for state post-conviction review or other collateral review. *See* 28 U.S.C. § 2244(d)(2). Although § 2244(d)(2) tolls the one-year limitation period while a state court collateral proceeding is pending, a state habeas proceeding cannot resurrect an already expired petition. *Tinker v. Moore*, 255 F.3d 1331, 1333-35 n.4 (11th Cir. 2001) ("[A] properly . . . filed petition in state court only tolls the time remaining within the federal limitation period."); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (a state habeas petition filed after the AEDPA limitations period has expired cannot toll the statute of limitations because there is no time left to toll).

Petitioner's conviction became final on January 11, 1988, when the time for him to file a direct appeal expired.  *See* Rule 4(b), Ala.R.App.P.  Petitioner took no action to challenge his conviction until December 6, 2006.  The time for petitioner to file a federal habeas corpus petition expired in 1997, long before he ever filed the Rule 32 petition in state court.  Therefore, the petition is due to be denied as time-barred.[2]

To the extent the habeas corpus petition can be read as invoking equitable tolling, it is by now clear in this Circuit that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."  *Helton v. Secretary for the Dep't of Corrections*, 259 F.3d 1310, 1312 (11th Cir. 2001).  Although "[e]quitable tolling is an extraordinary remedy which is typically applied sparingly," *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)), it is "appropriate when a movant untimely files because

---

[2] Petitioner contends in his habeas corpus petition that it is timely because his judgment of conviction became final when the Rule 32 proceedings were concluded.  This is simply incorrect.  Title 28 U.S.C. § 2244(d) provides that the limitation period begins to run on "the date on which the judgment became final by the conclusion of **direct** review or the expiration of the time for seeking such review" (emphasis added), not at the conclusion of collateral review.

of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence." *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir.1999) (emphasis added). The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner. *See, e.g., Helton*, 259 F.3d at 1313-14 (denying equitable tolling in light of petitioner's failure to present necessary evidence); *see also Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) ("The burden is on the plaintiff to show that equitable tolling is warranted.").

With respect to equitable tolling based on a claim of actual innocence, the Eleventh Circuit has stated:

> Neither the Supreme Court nor this Court has ever held that the Constitution requires an actual innocence exception to the AEDPA's one-year limitations period. *See Johnson v. Florida Dep't of Corr.*, 513 F.3d 1328, 1333 (11th Cir. 2008) ("To date, this Court has avoided this constitutional issue because no time-barred petitioner has made the requisite actual-innocence showing."). Before reaching this question, the petitioner must first make a sufficient showing of actual innocence. *Id.* This requires the petitioner to produce "'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Arthur*, 452 F.3d at 1245 (quoting *Schlup*, 513 U.S. at 324, 115 S.Ct. at 865). If the petitioner shows "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," then he has made a "gateway" claim of innocence allowing his otherwise barred constitutional

> claims to be considered on the merits. *Schlup*, 513 U.S. at 315, 327, 115 S.Ct. at 861, 867.
>
> In evaluating this new evidence, a habeas court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *House*, 547 U.S. at 537, 126 S.Ct. at 2077 (quotation marks and citation omitted). The court then assesses the likely impact of this new evidence on reasonable jurors. *Id.* at 538, 126 S.Ct. at 2077. The demanding nature of the *Schlup* standard ensures that only the "extraordinary" case will merit review of the procedurally barred claims. *Id.*

*Melson v. Allen*, 548 F.3d 993, 1002 (11th Cir. 2008).

Petitioner has failed to show "extraordinary circumstances" that have worked to prevent him from timely filing his habeas corpus petition. He has not been diligent in pursuing post-conviction relief; in fact, the delay of nearly 20 years shows a great lack of diligence. Petitioner has not submitted any affidavit or other evidence to support his claim of actual innocence, other than his bare assertion that a witness would testify that the assailant had tattoos. There is no indication whatsoever that this is a "trustworthy eyewitness account." Further, there is no indication that the victim has made any statement about whether her assailant had tattoos or not or what evidence was developed by counsel for petitioner during the criminal proceedings. Petitioner has not shown "that it is more likely than not that no reasonable juror

would have convicted him in the light of the new evidence" necessary to a "gateway" claim of innocence.

Petitioner relies on *District Attorney's Office for Third Judicial Dist. v. Osborne*, ___ U.S. ___, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009). In this case, a state prisoner brought a 42 U.S.C. § 1983 action to compel the release of biological evidence so it could be subjected to DNA testing. The Supreme Court found that Alaska law provided an inmate with a liberty interest sufficient to support a due process challenge to the state's refusal to give him access to its evidence for DNA testing. It also held that the ruling in *Brady v. Maryland*, that due process requires prosecutors to disclose material exculpatory evidence to the defendant before trial, does not extend to the postconviction context. It ultimately determined that the petitioner had no substantive due process right of access to the state's evidence so that he could apply new DNA-testing technology that might prove him innocent.

Alabama does not have a DNA-testing statute, nor have any state law procedures been established for defendants to request post-conviction DNA testing. *See Fagan v. State*, 957 So.2d 1159 (Ala.Crim.App. 2007). However, the Eleventh Circuit has recognized the availability of a 42 U.S.C. § 1983 action to obtain post-conviction access to DNA, under certain circumstances. *See Bradley v. King*, 556 F.3d 1225 (11th Cir. 2009); *Grayson v. King*, 460 F.3d 1328 (11th Cir. 2006).

The United States Supreme Court has held that the failure of police to preserve potentially useful evidence is not a denial of due process, absent a showing of bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood*, the defendant was found guilty of sexual assault on a young boy. After the assault, the boy was taken to a hospital where samples were obtained using a "sexual assault kit." The boy's clothes were collected but not refrigerated. Tests on the swab samples were inconclusive in establishing the identity of the assailant, and at trial, expert witnesses testified that the defendant might have been completely exonerated by timely performance of tests on properly preserved semen samples.

Contrasting the right of a defendant to potentially exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court stated:

> the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *Trombetta*, [467 U.S. 479, 486, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984),] that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read

> the "fundamental fairness" requirement of the Due Process Clause, *see Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

*Youngblood*, 488 U.S. at 57-58, 109 S.Ct. at 337.

The Supreme Court thus held that the Due Process Clause of the Fourteenth Amendment did not require the State to preserve the semen samples even though the samples might have been useful to the defendant. The mere failure to preserve potentially useful evidence does not demonstrate bad faith and does not constitute a denial of due process of law. The Court found that the failure to refrigerate the clothing or perform tests was at most negligent. None of the information was concealed from the defendant at trial, and the evidence was made available to the defendant's expert, who declined to perform any tests on the samples.

Petitioner argues that he has shown bad faith because (1) law enforcement destroyed the evidence in his case after his direct appeal time expired, but before the period within which he could have filed a Rule 32 period expired, and (2) state law

required law enforcement to retain the evidence indefinitely because his guilt was not conclusive.

*Ala. Code* § 36-18-2 sets out the duties of the Director of the Alabama Department of Forensic Sciences:

> The duties of the director shall be to make such investigations, including any necessary autopsy, to be performed by physicians licensed to practice medicine in Alabama and recognized and trained in forensic medicine and pathology; provided, however, that the director may waive this requirement temporarily whenever a medical examiner vacancy exists which he is seeking to fill. Said investigations of unlawful, suspicious or unnatural deaths and crimes as are ordered by the Governor, the Attorney General, any circuit judge, or any district attorney in the State of Alabama, and the director and his staff shall cooperate with the coroners, sheriffs and other police officers in Alabama in their investigations of crimes and deaths from unlawful, suspicious or unnatural causes. The director shall within his discretion visit the scene of any crime in the state for the purpose of securing evidence for the state. The director shall furnish a certified copy of his report of any investigation that the department conducts to the person or persons who ordered the investigation conducted. The director shall keep the original reports of all investigations that he conducts in his office; provided, that the director shall be authorized to photograph or microphotograph any record, document or photograph two years old or older currently maintained or acquired, received or produced in the future as a result of his duties as prescribed by law. Such photographs, microfilms or prints made therefrom, when duly authenticated, shall have the same force and effect at law as the original record or of a record made by any other legally authorized means and may be offered in like manner and shall be received in

evidence in any court where such original record or record made by other legally authorized means could have been so introduced and received. In like manner, reproductions made from such records by photographic or like process, when otherwise in compliance with applicable statutes, rules and regulations, shall be received and treated in any court of this state as fully as would a transcription or reproduction of such records made by any other means or process. All original records, documents, and photographs two years old or older currently maintained and acquired in the future may be destroyed at the discretion of the director, provided photographed or microphotographed reproductions of the destroyed material are maintained. The director shall furnish a certified copy in the form of reproductions from the photographed or microphotographed reports of any investigation that he conducts to the person or persons who ordered the investigation conducted. The director shall keep photographed or microphotographed reproductions of original reports of all investigations that he conducts in his office. Reproductions of such materials shall be public records and shall be open to public inspection at all reasonable times. Any person desiring reproductions of original reports shall be furnished same upon payment of the fee now prescribed by law.

It shall be the further duty of the director to cooperate with the Commissioner of Agriculture and Industries and the State Veterinarian in their investigations of deaths of domestic animals in cases of suspected criminal poisoning of such animals. The director shall perform such other duties as are prescribed by the Governor or the Attorney General of Alabama.

The director and his designated assistants shall exercise the same police authority as any deputy sheriff or state trooper in the State of Alabama.

A review of the language of the statute reveals that it does not impose the requirements asserted by petitioner. Instead of requiring "permanent preservation of evidence in cases where guilt is not conclusive," it requires that if the Department of Forensic Sciences participates in an investigation into "crimes and deaths from unlawful, suspicious or unnatural causes," then it shall "furnish a certified copy of the report of any investigation that the department conducts to the person or persons who ordered the investigation conducted." The original of the report is kept by the Department of Forensic Sciences, with the proviso that originals may be photographed, microfilmed or otherwise preserved, then destroyed, if two years old or older. The photographed or microfilmed report is to be kept by the Department of Forensic Sciences. This statute does not impose a requirement on law enforcement authorities to keep any and all evidence in any case indefinitely.

Petitioner complains that no evidence, apart from the police report, was kept in his case by "the State."[3] He contends that the destruction of the evidence within a year after his time to appeal expired establishes bad faith on the part of the State. However, any failure by "the State" to keep any and all evidence in petitioner's case after one year was not in derogation of § 36-18-2. Given the fact that petitioner

---

[3] Petitioner alleges in his petition that "the State" destroyed the evidence. He does not elaborate on whether he sought the information and evidence from the Calhoun County Sheriff's Department, the Calhoun County District Attorney, the Department of Forensic Sciences, or some other entity.

waited nearly 20 years to challenge his conviction, it would not have mattered had the State waited until after the Rule 32 statute of limitations expired to destroy the evidence. Further, because petitioner did not file a direct appeal after his *Alford* plea, the State reasonably concluded that it could destroy the evidence when it did. The mere fact that the evidence was destroyed does not support a finding of bad faith or even an inference thereof. This is not a case "in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Further, as discussed above, petitioner's reliance on § 36-18-2 as a mandate for law enforcement to retain evidence permanently is misplaced.

Based on the foregoing, it is RECOMMENDED that the petition for writ of habeas corpus be DENIED as time-barred.

### NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404

(5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 9th day of February, 2010.

                                                HARWELL G. DAVIS, III
                                      UNITED STATES MAGISTRATE JUDGE